**Winlock VAN CLEAVE, Individually and on behalf of all persons similarly situated**

**v.**

**The TOWN OF GIBSLAND, LOUISI-ANA, et al.**

**Civ. A. No. 74–582.**

United States District Court,
W. D. Louisiana,
Shreveport, Louisiana.

July 12, 1974.

O. L. Waltman, Waltman, Napper & Madden, Ruston, La., Thomas J. Wyatt, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for plaintiff.

Stephen J. Katz, Kidd & Katz, Monroe, La., for defendants.

STAGG, District Judge.

## FINDINGS OF FACT

On May 4, 1974, the Town of Gibsland held municipal elections in which all five aldermen seats were won by blacks. The plaintiff in this suit, filed on June 11, 1974, seeks to nullify that election, contending that the at-large electoral scheme is unconstitutional. This is a proposed class action brought pursuant to 42 U.S.C. Section 1983. Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. Section 2201, a preliminary injunction, a permanent injunction and other appropriate relief to enjoin the alleged deprivation, under color of law, by the State of Louisiana (and in particular, the Town of Gibsland) of the rights, privileges and immunities of the plaintiff and the class he seeks to represent, arising under the Constitution of the United States, and, more particularly, the Fourteenth and Fifteenth Amendments. Plaintiff, additionally, sought to prevent those who were elected from assuming office on July 1, 1974. Jurisdiction is conferred in this Court by U.S.C. Section 1343(3) and (4).

The plaintiff, Winlock Van Cleave, is a white citizen of the United States and a resident and registered voter in the Town of Gibsland, Bienville Parish, Louisiana. The plaintiff sues individually and as a representative of the class of white voters in the Town of Gibsland.

The defendants in this case are the Town of Gibsland, municipal and state officials. All but the Governor and Secretary of State are being sued in their individual as well as official capacities. It is noted that defendants John Ed Henderson, Perro Henson, Alvin Pearson, Lonnie Rhodes and John Frazier, Jr., are aldermen-elect for the Town of Gibsland. Defendant Jimmy Johnson is Chairman of the Democratic Executive Committee, and is being sued in his official and individual capacity, along with the said Committee.

The Town of Gibsland is a municipal corporation and is recognized by the State of Louisiana pursuant to LSA-R. S. 33:51 et seq. (Lawrason Act). According to the 1970 census, it has a population of 1,378—586 whites and 792 blacks. As of the date of the election in question, there were 424 registered white voters and 436 black voters living within the town boundaries. The testimony by the Registrar of Voters for Bienville

Parish indicated that although the blacks have long been a population majority in Gibsland, it is only in recent years that they have appeared in corresponding ratios on voter registration records.[1]

The May 4 primary election was carried out utilizing the at-large voting scheme conducted under the anti single-shot voting statute of the State of Louisiana, LSA–R.S. 18:351. There were eight candidates in the election, running for five seats. Among the eight candidates were three whites and five blacks. The five seats were won by the five blacks. In the same election, there were two candidates for mayor, both white. The plaintiff was the unsuccessful candidate in that race.

This case came on for an evidentiary hearing on June 25, 1974, on a rule to show cause why a preliminary injunction should not be issued. The motion to dismiss filed by defendants was referred to the merits. There was no evidence adduced at the hearing to establish any instances of discrimination against whites with regard to voting, voter registration, choice of political party, participation in any way in the political process or that the aldermen-elect will not be responsive to the minority's interests. The testimony by the plaintiff himself established that neither

he nor any member of his class had ever been discriminated against in any manner relative to the election of municipal officials in Gibsland.

By minute entry on June 28, 1974, the Court granted the defendant's motion to dismiss.

## CONCLUSIONS OF LAW

### I.

This action is properly before this Court as a class action. Rule 23 of The Federal Rules of Civil Procedure.

The at-large voting scheme complained of is not *per se* unconstitutional. See White v. Regester, 1973, 412 U.S. 755, 765, 93 S.Ct. 2332, 2339, 37 L. Ed. 314, 324; Zimmer v. McKeithen, 5th Cir., 1973, 485 F.2d 1297, 1304. The Supreme Court, however, has held such schemes to be unconstitutional where certain conditions are present. The Court in *White* said that it is not sufficient that the minority group show that they are not represented in proportion to their voting potential. "The plaintiffs' burden is to produce evidence to support findings that the political processes leading to nomination and election were not equally open to participation by the group in question—that its members had less opportunity than did other residents in the district to partici-

1. Testimony of the Registrar of Voters is interesting and informative. Portions of the Town of Gibsland are in two voting precincts of Ward 2 of Bienville Parish. The following is a tabulation from the Registrar's records, as testified to by Mrs. Pauline Culpepper, Registrar of Voters.

| | | |
|---|---|---|
| On July 13, 1966 | 522 white | 221 black |
| On January 2, 1967 | 526 | 228 |
| On January 6, 1968 | 527 | 395 |
| On January 2, 1969 | 534 | 421 |
| On January 2, 1970 | 508 | 414 |
| On January 2, 1971 | 497 | 428 |
| On January 2, 1972 | 549 | 492 |
| On January 2, 1973 | 588 | 608 |
| On December 1, 1973 | 574 | 579 |
| On March 20, 1974 | 579 | 594 |

Within the town boundaries of Gibsland, and qualified to vote in the election complained of, were these registered voters:

| | | | |
|---|---|---|---|
| Precinct 1 | 199 white | 81 black | (280) |
| Precinct 2 | 225 | 335 | (580) |
| Total: | 424 | 436 | (860) |

pate in the political processes and to elect legislators of their choice." White v. Regester, supra, 412 U.S. at 766, 93 S.Ct. at 2339, 37 L.Ed.2d at 324. See also Whitcomb v. Chavis, 1971, 403 U.S. 124, 149–150, 91 S.Ct. 1858, 29 L.Ed.2d 363. The plaintiff herein did not carry the burden required by *White*.

The Fifth Circuit in summarizing the Supreme Court's holding in *White* said, " * * * that access to the political process and not population was the barometer of dilution of minority voting strength." Zimmer v. McKeithen, supra, 485 F.2d 1297, 1303.

The Courts have identified factors which make for a dilution of voting strength. These factors are the " * * * · lack of access to the process of slating candidates, the unresponsiveness of legislators to their particularized interests, a tenuous state policy underlying the preference for multi-member or at-large districting, or that the existence of past discrimination in general precludes the effective participation in the election system * * *". Zimmer v. McKeithen, supra, 485 F.2d 1297, at 1305. It is clear from the plaintiff's testimony, previously cited, that these factors are not present in this case. The plaintiff testified that he was not denied access to the process of slating candidates. He admitted that it is premature to conclude that the black aldermen-elect will not be responsive to the needs of the white minority. There was absolutely no evidence that the policy underlying the voting scheme was racially motivated, and there was no evidence

to indicate any past discrimination relative to the plaintiff's minority group.

It is obvious from the registration figures (see footnote 1) and the election tabulations that a substantial number of voters did not trouble themselves to vote. In Precinct 1, for example, there were 199 white voters and 81 black voters. The tabulations show that the three white candidates drew 71 (Lovelace), 87 (Payne) and 74 (Sutton) votes.[2]

If less than half of the white registered voters in this area turned out to vote in the election, how can those stay-at-home electors now be heard to complain as part of a class seeking to overturn an election?

Perhaps the plaintiff seeks to slay the wrong dragon. The anti single-shot voting law (as discussed in *Zimmer*) may be found to be a worse curse to plaintiff than the multi-member district about which he complains.

The Court, in *Zimmer*, citing Gaffney v. Cummings, 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973), held that the number of registered voters was the key, not population. In Gibsland, the voting strength is nearly equally divided between whites and blacks. (Whites 49.30 per cent; Blacks, 50.70 per cent.) While anti single-shot voting was utilized in the election, the above-discussed primary factors were not present.

It is noted that the Court, in *Zimmer* and in Turner v. McKeithen, 5th Cir., 1973, 490 F.2d 191, recognized that the totality of the circumstances must be

2. The tabulation sheets of the town elections on May 4, 1974 (Exhibits P–5 and P–6) show:

| Pct. 1 | Pct. 2 | | Total: |
|---|---|---|---|
| 89 | 288 | Frazier (B) | 377 |
| 122 | 365 | Henderson (B) | 487 |
| 75 | 287 | Henson (B) | 362 |
| 71 | 135 | Lovelace (W) | 206 |
| 87 | 179 | Payne (W) | 266 |
| 90 | 321 | Pearson (B) | 411 |
| 62 | 268 | Rhodes (B) | 330 |
| 74 | 132 | Sutton (W) | 206 |

considered in determining whether dilution exists. No primary factors discussed in *White* or *Whitcomb* or *Zimmer* were present in this case. In fact, the exact political climate which Chief Judge Brown cited in *Turner* as providing a basis for changing the election scheme in Ouachita Parish existed in Gibsland, however, the normal roles of the contending forces are here reversed.

The plaintiff has suggested that a continuance of the present voting scheme will merely make for political domination of a different hue. This is speculation. The plaintiff has failed to prove what he must, under *White, Whitcomb* and *Zimmer*; had the required criteria been present, this Court would have been compelled to grant relief.

## II.

The plaintiff stated two causes of action:

1. He is deprived of the opportunity to elect a white to the Gibsland Board of Aldermen by the at-large scheme, in violation of his Fourteenth and Fifteenth Amendment rights and in violation of 42 U.S.C. Section 1983; and

2. He is deprived of the opportunity to serve on the above Board and is relegated to a permanent minority status by such a scheme in violation of his Fourteenth and Fifteenth Amendment rights and 42 U.S.C. Section 1983.

These two causes of action are based on the alleged unsoundness of the voting scheme utilized in Gibsland. This Court has outlined the criteria that must be present for such a voting plan to be violative of a minority's rights under the Constitution and laws of the United States. By the testimony of the plaintiff himself, it has been established that these criteria are not present in this case. Therefore, for the above-stated reasons, this Court declines to invalidate the election in question, and orders this case dismissed.